LOUISA LIVERANI, as Administratrix, etc., of ORRESTE LIVERANI, Deceased, Respondent, *v.* JOHN T. CLARK & SON, Appellant, Impleaded with BAY STEAMSHIP COMPANY OF AMERICA, LTD., Defendant.

Second Department, April 9, 1920.

Ships and shipping — negligence — death of employee of stevedore engaged in loading vessel — breaking of ringbolt not designed for use with stevedore's tackle — charge — when stevedore may not rely upon steamship company's inspection — failure to test strength of ringbolt — evidence justifying verdict for plaintiff — verdict not excessive.

Where in an action against shipowners and a contracting stevedore to recover for the death of an employee of the latter who was killed while using a hoisting gear by the breaking of a ringbolt in the deck of a vessel, it appeared that the ringbolt was not intended for stevedore's gear, for which another and more massive ring had been supplied, and there was evidence that the stevedore had been warned that the ringbolt would not hold but persisted in using the same, which, however, was denied by the stevedore, it was proper for the court to charge in substance that the stevedore could not rest upon the steamship company's inspection of the ringbolt or upon the assurances of the mate and boatswain.

The court also properly refused to charge that there was no duty on the part of the stevedore to test the ringbolt with a hammer in order to determine its condition below the deck, where it broke.

On all the evidence judgment against the stevedore, the appellant, affirmed.

A verdict of $9,000 is not excessive for the death of a man leaving a widow forty-four years old and five children.

Second Department, April, 1920.                    [Vol. 191.

APPEAL by the defendant, John T. Clark & Son, from a judgment of the Supreme Court in favor of the plaintiff, entered in the office of the clerk of the county of Kings on the 2d day of April, 1919, upon the verdict of a jury for $9,000, and also from an order entered in said clerk's office on the same day denying defendant's motion for a new trial made upon the minutes.

This recovery was against both the shipowner and the contracting stevedore who was loading the steamship *Sarnia*, for negligent injuries resulting in the death of Orreste Liverani, a longshoreman, by the breaking of a ringbolt to which the stevedore's gear was attached. The accident was on June 21, 1916, at the foot of Court street, Brooklyn, where the *Sarnia* was loading sugar in bags.

The hoisting falls were hooked by a snatch block into an iron ringbolt fast in the ship's deck. The ring or eye was to take a large hook. The shank or stem was of inch material. It ran down through about three inches of deck planking, and was clinched underneath the iron deck plates. Less than one inch of the shank came above the deck surface. The *Sarnia's* mate deposed to the effect that this eyebolt was not intended for the stevedore's gear; that for this hoisting, there was a square metal plate, with a massive ring called a " padeye; " further, that at first this snatch block was hooked into this padeye but after one slingload that the stevedore hooked it into this eyebolt, which was only intended to take the tack of a trysail; that the witness had then ordered the block restored to the padeye, and he warned the longshoremen that the eyebolt would not hold, but that they persisted in hooking on to this ringbolt, which soon after parted.

It is not disputed that in the course of raising twelve bags of sugar (not an excessive slingload) the shank of the eyebolt broke, so that the block thus released struck decedent with fatal effect.

It was disputed where the shank broke, and what this break showed. Testimony for the appellant was that it was the very bottom of the bolt that had been sheared off, and that it was only moderately rusted. The jury, however, could have found that the break left but an inch of the shank on the eye, or even that it broke flush with the deck; and that

rust had eaten away about half its sectional area. The workman who hooked on the block noted the rusty eyebolt itself, with a ring of rust corroding the wood about it.

Appellant's foreman testified that before attaching his gear he had asked if the bolt was strong enough, and was assured by the mate that it would hold two slings, which the boatswain confirmed; that the break left on the eye about an inch of shank, but that he did not look at the fractured surface.

Plaintiff's expert testified that where rust appears on or about such a ringbolt in an exposed deck, a hammer test is usual. If heavily rusted so as to reduce the sectional area, the bolt, under the taps of the hammer, becomes loose in the hole, and may bend, or possibly break.

Defendant's expert doubted if such a result would follow, but he admitted that water from the deck, penetrating around such a bolt, would corrode it, unless it were galvanized.

The court charged in substance that plaintiff could not recover if the *Sarnia* had a padeye, and the longshoremen chose not to use it; or if this eyebolt broke at the bottom where it came through the decks. After telling them the duty to inspect and test such an appliance, and defining the duty of reasonable inspection, the court charged that Clark & Son could not rest upon the steamship company's inspection of an appliance, which the stevedore was to use in loading. Counsel for appellant excepted to the instruction that Clark & Son was not relieved of its duty to inspect, by reason of the fact that this appliance may have been furnished by the steamship company for the stevedore's use. He also asked an instruction that if the jury found that the ringbolt broke at a point five-eighths of an inch or more below the surface of the deck, there could be no recovery against Clark & Son. This the court declined, and appellant's counsel duly excepted. He then requested: " I ask your Honor to charge the jury that if they find that this ring-bolt was furnished by the ship for the use which was being made of it at the time of this accident, that the defendant Clark & Son had a right to rely upon the ship having performed its duty in respect to inspection and care of that ring-bolt, and in the absence of something about the visible part of the ring-bolt to put Clark & Son on their guard, as to its being in a dangerous condition, that there was no

duty on the part of Clark & Son to apply the hammer test to the bolt to determine its condition below the deck. The Court: I decline to charge other than I have already charged on that subject." Counsel excepted and said: " I ask your Honor to charge the jury that reasonable care means reasonable under the circumstances of the particular case, and in view of the relations of the parties to the subject matter; that conduct on the part of the stevedore in this case which would satisfy the rule of reasonable care might not satisfy the rule if carried out by the owner of the ship, because the relation of the two parties to the ring-bolt, their opportunities for observation and inspection, and for knowledge respecting the length of time it had been used, and the character of the use of it, are not the same." This the court charged.

The jury returned a verdict for the plaintiff for $9,000, upon which judgment was entered against both defendants, from which only Clark & Son have appealed.

*Bertrand L. Pettigrew* [*Walter L. Glenney* with him on the brief], for the appellant.

*Alvin C. Cass,* for the respondent.

PUTNAM, J.:

Before hooking on to this ringbolt, the foreman stevedore saw in its appearance something that started inquiry as to its strength and sufficiency. No question was made as to its size. Hence the inference that the repeated inquiries were prompted by its rusted condition. Such a blackened and corroded state of the surrounding deck points to impairment of the iron shank. Although no witness went to the extent of calling it " iron-sick," evidently there were plain indications of weakness. In such case, the employing stevedore could not rest on the ship's performance of its duty, or rely on the assurances of the mate and boatswain. The court's charge as to fracture at the bottom of the bolt was entirely in appellant's favor. He left to the jury the question of proper inspection, and adopted appellant's request as to the distinction in this respect between the obligation of the shipowner and the duty of the master stevedore to the decedent. The court properly declined the quoted request about applying the

hammer test.   It limited such test to something about the bolt, thus ignoring the surrounding wood; and as the evidence pointed to a break at the deck or just below it, the request recurred to the idea of appellant's witness, that the break was at the bottom of the bolt.   The request was also prefaced by an erroneous statement that the appellant had a right to rely upon the ship having performed its duty in respect to care and inspection, a ruling which had been previously asked, and properly denied.   It cannot be fairly said that the verdict was excessive for a man leaving a widow forty-four years old, and five children.

I advise that the judgment and order be affirmed as to this appellant, with costs.

Present — JENKS, P. J., RICH, PUTNAM, BLACKMAR and JAYCOX, JJ.

Judgment and order unanimously affirmed, with costs.